UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LEVI ALEXANDER WALTERS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 1:21-cv-02433-JMS-TAB |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**Order Denying Motion for Relief Pursuant to 28 U.S.C. § 2255
and Denying Certificate of Appealability**

This matter is before the Court on petitioner Levi Walters' motion for relief pursuant to 28 U.S.C. § 2255. Dkt. 1. For the reasons explained in this Order, Walters' motion to for relief pursuant to 28 U.S.C. § 2255 is **denied.** Consistent with this ruling, Walters' motion for evidentiary hearing, dkt. [32], is **denied**, and his motion for expansion of the record, dkt. [31], is **granted** to the extent that the Court has reviewed and considered all of Walters' filings.

## I.   The § 2255 Motion

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *See Davis v. United States*, 417 U.S. 333, 343 (1974). A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Relief under this statute is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79

(7th Cir. 2013) (citing *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996); *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997)).

## II.     Factual Background

The facts of Walters' crime, as stipulated in the parties' plea agreement, are as follows.

**A.     Overview:** In July of 2019, the Defendant told police that he had used Minor Victim 1 to create sexually explicit images of Minor Victim 1. Walters told police that he did this on at least 3 occasions at his house in Bartholomew County, in the Southern District of Indiana. Walters' crimes against Victim 1, a child who was less than 12 years of age, were discovered by a relative of Minor Victim 1 (referenced herein as Witness 1). Witness 1 went through Walters' phone, believing that Walters had lied to her, and she found at least 1 video which was a visual depiction of Minor Victim 1's vagina and Walters' hand. Witness 1 told the police about his conduct. Witness 1 called the police, who would subsequently obtain a search warrant, interview Walters, and forensically examine the phone in question. Police found multiple videos and images which showed that Walters sexually exploited Minor Victim 1 from at least May of 2019 until the time of Walters' arrest in July of 2019.

**B.     Parties Involved**: Walters and Witness 1 lived together in Bartholomew County in the Southern District of Indiana. Minor Victim 1, a child less than 12 years old, was biologically related to Witness 1. Walters and Minor Victim 1 lived in the same house at all relevant times, and Walters was in a position of trust with Minor Victim 1.

**C.     Witness 1 Discovered Sexual Exploitation Videos:** Between 3:30 am and 4:00 am on July 18, 2019, Witness 1 got up to use the restroom. When she got out of bed, Walters told her that Minor Victim 1 had been up and that he had put her back to bed. Witness 1 became suspicious of Walters due to past instances of cheating. Witness 1 took Walters' cell phone and looked at the last applications that he used on the device. She located videos / images of Minor Victim 1's vagina and Walters' hand in the area of Minor Victim 1's genitals. Witness 1 then looked in the "trash" of the phone where she located multiple videos. Witness 1 watched one video in which she observed there was "rubbing." Witness 1 recognized Walters' hand in the video depicting Minor Victim 1's vagina, and she also recognized a wedding ring on his hand and the gym shorts worn in the video as being Walters'.

**D.     Confrontation with Walters:** Witness 1 confronted Walters about the videos/images, and he told her that the videos/ images were of him putting Minor Victim 1 to bed. When Witness 1 told Walters that she was contacting law enforcement, Walters pleaded with her not [to] call and said that he would not do it again. As Witness 1 called police, Walters went out the back door of the house.

Witness 1 went to the back door area of the house, where she found Walters in possession of a handgun. Witness 1 secluded Minor Victim 1 and another child in a room while she was on the phone with dispatch. Walters gave Witness 1 the handgun, which she placed on the washer, however Walters was able to get another gun. Walters never threatened Witness or the children with the guns during the incident. Witness 1 locked the doors to the home while Walters was outside and the doors stayed locked until officers arrived on scene.

  E. **Police Investigation**: When the police arrived, Witness 1 had Walters' cell phone and had the videos pulled up for police. Witness 1 showed Deputy Andrew Dougan (Dougan) the videos. Dougan saw a hand moving Minor Victim 1's pants to the side, exposing her vagina. Dougan noted that in one video, the hand exposed the child's vagina and then touched her vagina and appeared to penetrate her vagina with a finger.

  F. **Evidence removed from the scene**: Inside of Witness 1's car, Dougan located the green wedding band that was seen in the video. Witness 1 allowed Dougan to take the bed sheet into evidence, as Dougan could clearly see this sheet in the videos he viewed. Dougan also gathered both handguns that Walters allegedly put to his head.

  G. **Walters' Initial Statement**: Deputy J.M. Bush (Dep. Bush) stayed with Walters while Dep. Dougan interviewed Witness 1. Dep. Bush read Walters his Miranda rights and Walters advised that he understood them. Walters advised Dep. Bush that he took the video. Dep. Bush noted that Walters then volunteered that he was just curious and that was why he did it. Walters went on to say he knew he did a bad thing. After a few minutes, Dep. Dougan asked Dep. Bush if Walters was wearing his wedding band. Walters advised that Walters was. Dep. Bush looked at the ring and Dep. Dougan then asked Dep. Bush if the ring was green. Dep. Bush advised Dep. Dougan that the ring looked white and was silicone. At this time, Walters said, "Oh yeah because of the video," referencing his ring. Walters told Dep. Bush that he knew he was going to jail and should go. Walters said it would at least be possession of child pornography even though he had deleted the video.

  H. **Physical Examination of Minor Victim 1**: A Sexual Assault Nurse Examiner conducted a medical examination on Minor Victim 1 at Riley Hospital for Children. Following the examination, Registered Nurse Jamie Haddix provided police with the evidence collection kit. She informed police that there was some redness in Minor Victim 1's vaginal area, and Minor Victim 1 said that she was "sore."

  I. **In-station Interview of Levi Walters**: On July 18, 2019, Det. William Kinman (Det. Kinman) of the BCSO advised of Walters of his Miranda rights during a recorded interview. Walters admitted that the videos on the cell phone were in fact taken by Walters. He said that the recordings happened on

three different occasions. When Det. Kinman asked Walters about a video where Minor Victim 1 was digitally penetrated, Walters advised that if it happened it was not intentional. Walters said that he committed these acts out of "curiosity" after watching some "Tik-Tok" videos. [Footnote in original omitted.] Walters denied having an erection during these incidents, but he said that it was an "adrenaline rush" and he had an increased heart rate. Walters said that there were no more videos other than what was on the cell phone. He said that he would delete the videos as soon as he took them.

      **J.**    **Second Interview of Walters**: On July 19, 2019, Det. Kinman obtained a search warrant for Walters' DNA. Det. Kinman again read Walters his advice of rights. When Kinman discussed Minor Victim 1's examination at the hospital, Walters denied that any of his semen would be on Minor Victim 1's underwear. Walters said that he had masturbated prior to coming home the day before. He did mention that he had dry hands and that he would "lick" his hands at times.

      **K.**    **Forensic Examination**: Sgt. Patrick Deckard (Deckard) with the Indiana State Police examined Walters' cell Phone and tablet pursuant to a search warrant. On the cell phone, within the "trash" folder, Deckard found multiple videos and images that showed Minor Victim 1's exposed genitals and pubic area. In the videos, it would appear that the child is sleeping; however, Minor Victim 1 would occasionally move or roll away, as if to avoid the touch, including when Walters attempted to spread the child's legs or to pull back her clothing to expose her genitals. The following chart reflects the evidence of the crimes. The counts have been grouped by date of creation of the visual depiction and the clothing worn by Minor Victim 1. In each of these counts, the visual depictions referenced show the use or attempted use of Minor Victim 1 by the Defendant to create sexually explicit visual depiction. In some of the visual depictions, including those in Count 3, the Defendant's finger has penetrated Minor Victim 1's external genitals.

*USA v. Walters*, 1:19-cr-00298-JMS-TAB-1 (hereinafter "Crim. Dkt."), dkt. 41 at 11-16.

On September 5, 2019, Walters was charged with five counts of Sexual Exploitation of a Child / Attempted Sexual Exploitation of a Child, in violation of 18 U.S.C. § 2251(a) and € (Counts 1-5) and Tampering with a Witness, Victim, or Informant, in violation of 18 U.S.C. § 1512(a)(2)(C) (Count 6). Crim Dkt. 23. Walters retained Jeffrey Baldwin to represent him, Baldwin negotiated a plea agreement with the United States, and the parties filed a petition to enter a plea of guilty and plea agreement on January 8, 2020. Crim. Dkts. 6, 41. Walters agreed

to plead guilty to Counts 1, 3, and 5, and the United States agreed to dismiss Counts 2, 4, and 6. *Id*. at 1-2, ¶¶ 1-2. The parties further agreed that Walters would be sentenced to a minimum term of 15 years' imprisonment and maximum term of 45 years' imprisonment and that his total offense level should be 43. *Id*. at 5, ¶ 10A; 19-22, ¶¶ 22A-E. Walters agreed to waive his right to appeal the conviction and sentence and not to contest or seek to modify his conviction or sentence in any action, excluding claims of ineffective assistance of counsel.

On September 23, 2020, the Court held a combined plea and sentencing hearing at which Walters pleaded guilty and was sentenced to a term of 180 months on counts 1 and 5 and 360 months on count 3, to be served concurrently. Crim Dkts. 54, 55. Walters did not appeal.

On September 14, 2021, Walters filed a motion to vacate his sentence under § 2255 and a supporting brief and affidavit. Dkts. 1, 2, 3. In his motion, Walters claimed that Baldwin was effective because Baldwin: (1) advised him to accept the United States' plea offer; (2) failed to investigate his innocence or interview his family; (3) failed to communicate with him; (4) failed to allow him to review his discovery; (5) failed to object to a sentencing guideline enhancement; and (6) failed to file a notice of appeal. *See* dkts. 1, 2.

On February 9, 2022, the United States filed its response to Walters's allegations. Dkt. 11. Walters filed a reply brief in which he attempts to raise additional grounds for his ineffective assistance of counsel claims, specifically that Baldwin failed to request a mental evaluation and failed to file a motion to suppress a warrantless search of his cell phone. *See* dkt. 18. Walters also claims for the first time in his reply brief that he is actually innocent because he took the images and videos of Minor Victim 1 in order to document that the child's upper legs were "raw and inflamed" from wearing a life vest. *Id*. at 2-4. The United States filed a sur-reply, dkt. 23, and Walters filed a sur-sur-reply, dkt. 33.

### III.     Discussion

#### A. Ineffective Assistance of Counsel

A petitioner claiming ineffective assistance of counsel bears the burden of showing (1) that trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688–94 (1984); *United States v. Jones*, 635 F .3d 909, 915 (7th Cir. 2011). If a petitioner cannot establish one of the *Strickland* prongs, the Court need not consider the other. *Groves v. United States,* 755 F.3d 588, 591 (7th Cir. 2014). To satisfy the first prong of the *Strickland* test, a petitioner must direct the Court to specific acts or omissions of his counsel. *Wyatt v. United States,* 574 F.3d 455, 458 (7th Cir. 2009). The Court must then consider whether in light of all of the circumstances counsel's performance was outside the wide range of professionally competent assistance. *Id.* To satisfy the prejudice component, a petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

#### 1.     Failing to Communicate, Failing to Investigate or Conduct Interviews, and Advising Walters to Accept a Plea Offer

Walters argues primarily that his attorney rendered ineffective assistance of counsel by failing to investigate or conduct interviews, which resulted in erroneous advice to accept a plea offer. Walter also argues that his attorney rendered ineffective assistance of counsel by failing to communicate with him such that he had "no choice but to enter a plea of guilty." Dkt. 2 at 5.

Although Walters frames these allegations as separate claims of ineffective assistance of counsel, *see* dkt. 2 at 4-5, they are so interconnected that the Court will address them together.

The Supreme Court has recognized that defendants are entitled to the effective assistance of competent counsel during plea negotiations. *See Lafler v. Cooper*, 566 U.S. 156 (2012). In the

context of a plea, the "defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)). Similarly, when alleging claims of failure to investigate, a defendant "must prove that evidence uncovered during that investigation would have led [his] attorney to change [his] recommendation to accept the plea offer." *Warren v. Baenen*, 712 F.3d 1090, 1097 (7th Cir. 2013).

Here, Walters argues that Baldwin failed to communicate with him about any potential defense and failed to investigate or conduct interviews before recommending that Walters accept a plea offer. *See* dkts. 2 at 4-5; 7 at 3-4. He argues that family members were willing to testify that Minor Victim 1 had an ongoing medical issue, namely a rash from wearing a life-vest, and that the photographs were taken to document that issue. *See* dkts. 1, 2; *see also* dkt. 7 at 2 (describing a "rash that became infected.").

In response, the United States argues that there is no valid medical reason for Walters to have recorded videos of himself touching and penetrating Minor Victim 1's external genitals while she slept, and that Baldwin cannot have been deficient for not investigating a "palpably incredible" defense. Dkt. 11 at 15. Rather, Baldwin advised Walters "of the overwhelming evidence against him and potential for additional charges" and "negotiated a favorable plea." *Id*. at 22-23. In support of this assertion, the United States produced an affidavit from Baldwin attesting that he "read and discussed the Plea Agreement" with Walters and "answered any questions [Walters] had about the Plea Agreement." Dkt. 11 at 1, ¶¶ 7-8.

Walters reiterates in his reply that there was an innocent explanation for his taking of photographs and video and that members of his family "knew of the conduct and approved." Dkt.

18 at 4. He further attests in his sur-sur-reply that he "informed [Baldwin] about the rash on August 20, 2022" and that his family also "informed [Baldwin] about the rash and images." Dkt. 33 at 3.

Per Walters' own sworn statements, Baldwin was aware of the potential rash defense when he advised Walters to accept the plea offer. *See id.* The Court therefore finds undisputed that Baldwin's advice to Walters to accept the plea offer was based on Baldwin's review of the evidence and consideration of the strength (or weakness) of any potential defenses. Walters has therefore failed to demonstrate that any further investigation by Baldwin would have changed his recommendation to accept a plea offer, as is required of him. *Warren*, 712 F.3d 1090, 1097. Walters is not entitled to relief on these grounds.

2. **Failing to Allow Walters to Review Discovery**

Walter also argues that Baldwin rendered ineffective assistance of counsel by failing to allow him to review the discovery, thus limiting his ability to aid in his own defense. Dkt. 2 at 4. As the United States correctly points out in response, Walters was not constitutionally entitled to discovery in this type of case. *United States v. Shrake*, 515 F.3d 743, 745 (7th Cir. 2008) (citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *Gray v. Netherland*, 518 U.S. 152, 168 (1996). Furthermore, the discovery here included photos and videos that constituted child pornography, and federal law precludes a defendant from obtaining a copy of child pornography in preparation for trial. *See* 18 U.S.C. § 3509(m)(2)(A). Instead, the discovery was properly made available for Baldwin to review, *see* 18 U.S.C. § 3509(m)(2)(A)-(B), and there is no dispute that Baldwin did so. *See* dkt. 11-3 at 1 ¶ 5. Accordingly, Walters cannot show ineffective assistance of counsel on this ground.

### 3. Failing to Object to Sentencing Guideline Enhancement

Next, Walter argues that his attorney rendered ineffective assistance of counsel by failing to object to a sentencing guideline enhancement. Dkt. 2 at 5. The Seventh Circuit is "reluctant to allow prisoners to circumvent the rule against raising Sentencing Guideline arguments in collateral proceedings by recasting their Guidelines arguments as claims of ineffective assistance of counsel." *Allen v. United States*, 175 F.3d 560, 563 (7th Cir. 1999). Only "Sentencing Guidelines errors of constitutional proportion" that resulted from an ineffective assistance of counsel may be considered. *Id.* However, "an attorney's unreasonable failure to identify and bring to a court's attention an error in the court's Guidelines calculations that results in a longer sentence may constitute ineffective assistance." *United States v. Jones*, 635 F.3d 909, 916 (7th Cir. 2011) (citing *Glover v. United States*, 531 U.S. 198 (2001)).

Here, Walters argues that Baldwin should have objected to a 4-point guideline enhancement under U.S.S.G. § 2G2.1(b)(4). Dkt. 2 at 5. But as the United States correctly points out, Walters received no such enhancement. Dkt. 11 at 23. Rather, Walters received a 2-point sentencing enhancement with respect to Count 3 pursuant to U.S.S.G. § 2G2.1(b)(2)(A) because that offense involved the commission of a sexual act or sexual contact, to which Walters stipulated in his plea agreement. *Id.* at 23-24 (citing Title 18 U.S.C. § 2246(2)(C)); *see also* Crim Dkt. 41 at 11-16.

Because there was no error in the Court's application of the two-level enhancement pursuant to U.S.S.G. § 2G2.2(b)(4), Baldwin's performance could not be deficient for failing to object. *Faucett v. United States,* 872 F.3d 506, 512 (7th Cir. 2017) ("Refraining from a meritless sentencing argument cannot be characterized as objectively unreasonable."); *see also Fuller*, 398 F.3d at 652. Walters also fails to show that he was prejudiced under the second prong of

*Strickland*, when he fails to show the objection would have been sustained. Thus, Baldwin's failure to object to the sentence enhancement was not ineffective assistance of counsel, and Walters is not entitled to relief on this ground.

### 4. Failing to File a Notice of Appeal

Walters also argues that his counsel was ineffective for failing to file a notice of appeal. "When a defendant asks his attorney to pursue a direct appeal and the attorney does not do so, it is per se ineffective assistance of counsel." *Rowell v. United States*, 694 F.3d 898, 901 (7th Cir. 2012) (cleaned up). In such circumstances, "prejudice is presumed . . . even when the defendant has signed an appeal waiver." *Garza v. Idaho*, 139 S. Ct. 738, 743 (2019). In *Garza*, the Supreme Court noted that "simply filing a notice of appeal does not necessarily breach a plea agreement, given the possibility that the defendant will end up raising claims beyond the waiver's scope." *Id*. at 746. "When counsel fails to file a requested appeal, a defendant is entitled to . . . an appeal without showing that his appeal would likely have merit." *Peguero v. United States*, 526 U.S. 23, 28 (1999).

In his motion, Walters admits that he "did not specifically inform [Baldwin] to file an appeal" when they spoke after the sentencing hearing, dkt. 2 at 6, but that he expressed interest in an appeal and Baldwin told him that he had waived his right to appeal. *Id*. In his affidavit, Walters states differently that he "requested Counsel Baldwin about filing an appeal [sic]," dkt. 3 at 1 ¶ 6, without specifying how or when he did so. The United States has provided the affidavit from Baldwin in which he attests that he has "no recollection of [Walters] having ever requested that [he] file a Notice of Appeal" and that nothing in his review of the file indicates otherwise. Dkt. 11-1 at 1 ¶ 11-12. In his reply brief, Walters attests that he "did ask his Counsel about appealing the sentence which Baldwin does not recall" and that he "categorically wished to

appeal his sentence." Dkt. 18 at 4. He then reiterates in his sur-sur-reply "inquired about appealing the conviction and sentence yet was rebuffed by Mr. Baldwin." Dkt. 33 at 5.

Even construed liberally, Walters' assertions do not raise an issue of fact regarding whether Walters expressly instructed Baldwin to file an appeal on his behalf. To the contrary, Walters admits that he did not specifically instruct Baldwin to file an appeal, *see* dkt. 2 at 2, but he persists in arguing that Baldwin nevertheless should have filed an appeal on his behalf anyway. *See* dkt. 33 at 5. ("What sane person who claims he is not guilty will not want a review of his case."). But Baldwin had no such authority. *See Garza*, 139 S.Ct. at 746 ("[T] the bare decision whether to appeal is ultimately the defendant's, not counsel's, to make."). Because it is undisputed that Walters never "specifically" asked Baldwin "to file an appeal," dkt. 2 at 6, Walters is not entitled to relief on this ground.

### B. Arguments Raised for the First Time in Reply

Finally, Walters raises new claims for relief in his reply brief, specifically that his counsel should have performed a mental evaluation and should have moved to suppress certain evidence retrieved from his cell phone. *See* dkt. 18 at 1-4. The Court finds that these newly raised arguments are waived. *See Griffin v. Bell*, 694 F.3d 817, 822 (7th Cir. 2012) ("arguments raised for the first time in a reply brief are deemed waived"); *Hernandez v. Cook Cnty. Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011) (same); *United States v. Foster*, 652 F.3d 776 n. 5 (7th Cir. 2001) ("The reply brief is not the appropriate vehicle for presenting new arguments or legal theories to the court."). Accordingly, no relief is available on these newly raised grounds.

### IV. Conclusion

For the reasons above, Walters' motion for relief pursuant to § 2255 is **denied** and this action is **dismissed with prejudice**. Consistent with this ruling, Walters' motion for evidentiary

hearing, dkt. [32], is **denied**, and his motion for expansion of the record, dkt. [31], is **granted** to the extent that the Court has reviewed and considered all of Walters' filings.

Judgment consistent with this Order shall now issue and the Clerk shall **docket a copy of this Entry in No. 1:19-cr-00298-JMS-TAB-1**. The motion to vacate, Crim. Dkt. [58], shall also be **terminated** in the underlying criminal action.

### V. Denial of Certificate of Appealability

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition. Rather, he must first request a certificate of appealability. *See Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014). Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 Proceedings, and 28 U.S.C. § 2253(c), the Court finds that Bell has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court therefore **denies** a certificate of appealability.

**IT IS SO ORDERED.**

Date: 5/10/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

LEVI ALEXANDER WALTERS
17172-028
LEWISBURG - USP
LEWISBURG U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 1000
LEWISBURG, PA 17837

Kristina M. Korobov
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kristina.korobov@usdoj.gov